**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Calvin R. Pettrey, and** | ) | **CASE NO. 1:05-cv-1504** |
| **Nikki Pettrey** | ) | |
| | ) | |
| Plaintiffs, | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| Vs. | ) | |
| | ) | |
| **Enterprise Title Agency, Inc.,** | ) | |
| **First USA Title Agency, LP,** | ) | **Memorandum Opinion and Order** |
| **John DeSantis, and** | ) | |
| **John Doe(s)** | ) | |
| | ) | |
| Defendants. | ) | |

**INTRODUCTION**

Defendants Enterprise Title Agency, Inc. ("Enterprise"), First USA Title Agency, LP ("First USA") and John DeSantis (collectively "Defendants") have filed a Motion for Protective Order (Doc. 17) and a Motion to Designate Documents and Testimony Confidential and to Prohibit Disclosure of Non-Public Information (Doc. 61). This case arises from Enterprise and DeSantis allegedly setting up sham companies such as First USA to cover up the improper payment of referral fees to DeSantis. For the reasons that follow, the motions are DENIED.

1

**BACKGROUND**

Plaintiffs Calvin and Nikki Pettrey allege the following in their Complaint. Plaintiffs purchased a home in June 2004. Defendant DeSantis was the real estate agent for the transaction. He told Plaintiffs that the sellers insisted they use Defendant Enterprise as the settlement agent for the transaction while the sellers were told that Plaintiffs insisted on Enterprise. At the closing Plaintiffs learned that Defendant First USA[1] was owned by DeSantis and Enterprise, and would be paid to perform certain services related to the closing. This was outlined on a HUD-1 Settlement Statement.

Plaintiffs contend that the HUD-1 Settlement Statement concealed the true nature of First USA, which performed no services and added no value to the transaction. All services credited to First USA were instead performed by Enterprise. Fees paid to First USA were in fact a kickback or illegal referral fee paid by Enterprise to DeSantis.

Plaintiffs bring claims for Violation of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2607 (Count I), Negligent Misrepresentation (Count II), Violation of the Consumer Sales Protection Act (Count III) and Civil Conspiracy (Count IV). They seek to represent a class of "[a]ll borrowers who entered into mortgage loan transactions using the services of Enterprise where the HUD-1 Settlement Statement, or other document in the loan file, included a charge for or payment allocable to an affiliated business arrangement or entity."

Plaintiffs served initial discovery requests on Enterprise and DeSantis. Defendants initially refused to produce any responsive documents, in part to seek agreement on a

---

[1] Such entities are generally referred to as "Affiliated Business Arrangements" or AfBAs.

confidentiality order and in part because they filed a Motion for Protective Order. Defendants' Motion for Protective Order sought an order from the Court limiting discovery of the following: 1) documents in the possession of Enterprise or DeSantis relating to other AfBAs not parties to the lawsuit; 2) client files for real estate transactions, closing, and/or title services performed for persons other than the Pettreys that relate solely to the purported class claims; 3) DeSantis's tax returns; and 4) documents that identify the number of real estate transactions for which DeSantis received a real estate commission.

The parties eventually reached a resolution on issues 1 and 2. In a series of letters exchanged between the parties Defendants agreed to produce limited documents relating to the AfBAs and to limit production of real estate transactions to a relevant period starting a little more than a year before the date Plaintiffs filed their Complaint. The Court has not seen any correspondence indicating that agreement was reached on issues 3 and 4.

The parties also negotiated a Confidentiality Order. Prior to signing the order, Plaintiffs' counsel expressed to Defendants' counsel his concern that defendants often designate virtually every document as confidential. Defendants' counsel assured Plaintiffs' counsel that "they would only mark documents 'confidential' in good faith and would be judicious in doing so."[2] The parties eventually agreed on a Confidentiality Stipulation and Order which was entered by the Court.[3] Among other things, the Confidentiality Order provided the following procedure for

---

[2] Plaintiffs support this contention via affidavit. Although Defendants state their disagreement that this conversation ever occurred, they only do so in the text of their brief.

[3] The Confidentiality Order was entered by Judge Manos. The action was reassigned to this Court on July 11, 2006.

the designation of confidential documents:

- Any document that contains or comprises non-public information may be designated as "Confidential" in the manner described herein, only if a party determines in good faith that any such document reflects the producing party's trade and business secrets or other confidential financial, personal, commercial or proprietary information, which, if disclosed publicly, would put the designating party at a competitive disadvantage. * * * Only non-public documents . . . produced in discovery may be designated as "Confidential."

(Doc. 42). The Confidentiality Order provided a procedure for challenging a confidential designation and resolving any disputes over such challenges:

- If a party seeks removal of a particular item as "Confidential" from this Stipulation and Order, the following procedure shall be utilized:
    a. The party seeking such removal shall give all counsel of record for the designating Party written notice thereof by facsimile or electronic mail, specifying the document, information, or other items as to which such removal is sought and the reasons for the request;
    b. If an agreement cannot be reached by negotiation, then the producer must move promptly for a ruling from the Court on the continued application of this Stipulation and Order to such "Confidential" discovery materials. * * * In the event the producer fails to seek a ruling form the Court within ten (10) calender days from the receipt of a request in writing that discovery materials designated as "Confidential" be released from the requirements of this Stipulation and Order, the discovery materials covered by the request shall be deemed not confidential.

(Doc. 42). The Stipulation also allowed parties to designate certain lines of depositions as confidential "in good faith."

Defendants eventually produced 152 boxes of documents containing approximately 400,000 pages of material.[4] Defendants marked every single page as confidential without reviewing the documents for confidential material. Two lawyers for Plaintiffs then spent a

---

[4] The parties could not agree to a more limited sample production.

number of days reviewing the documents.  Soon thereafter Plaintiffs sent a letter to Defendants, explaining that "contrary to your assurance that the Defendants would be selective in designating documents as confidential, you have designated and stamped virtually every document as 'confidential.'"  On February 2, Plaintiffs made a formal request that Defendants remove the confidential designation from each of the produced documents.  They stated the following three reasons: 1) the determination of confidentiality was not made in good faith; 2) none of the documents reflect "trade and business secrets or other confidential, financial, personal commercial or proprietary information"; and 3) disclosure of the designated documents would not put Defendants at "a competitive disadvantage."

Defendants first responded eight days later asking "whether there are any documents that you agree can be kept confidential" prior to "filing our motion with the court . . . ."  Defendants understood Plaintiffs' letter "to state that you believe none of the documents should be confidential."  Plaintiffs responded that in their view none of the documents qualified as confidential but provided Defendants additional time to "make a good faith effort to re-designate only those documents that are truly 'confidential' under the terms of the Order entered by the Court."  Defendants asked that they be given until "February 21 . . . to file a motion with the court per . . . the Confidentiality Stipulation and Order."  Plaintiffs agreed to this request.  Defendants also explained that they would "put together a list of the documents produced that were marked Confidential and the reasons for confidentiality."  They suggested that "you then review the list and specify which documents you are seeking to have the Confidential designation removed and the reasons for your request."

Rather than filing a motion on February 21, Defendants sent Plaintiffs an e-mail explaining that all of the submitted documents were confidential and providing a brief

5

explanation why each of four categories of information was confidential.  Defendants then sought to shift the burden to Plaintiffs by asking them to provide "a list of the specific documents as to which removal of the CONFIDENTIAL designation is sought and the reasons for each of your document requests."  The e-mail continued as follows:

> If we cannot reach an agreement, I will file a motion with the Court requesting a ruling as to any documents that remain in dispute within 10 days of receipt of your list of specific documents and reasons therefore.  Although we previously agreed that the Defendants would have until February 21, 2006 to file said motion, I do not believe that you have complied with paragraph 12(a) of the Confidentiality Stipulation and Order, which requires "specifying the document, information, or other items as to which such removal is sought and the reasons for the request."  Please advise if you disagree.

Plaintiffs in fact did disagree and informed Defendants that they considered the disputed materials "covered by the request [to] be deemed confidential" pursuant to Defendants' failure to file a motion as required by the plain language of the Stipulation and Order.  Plaintiffs nonetheless agreed to limit disclosure of "class members' documents that contain either a social security number or personal financial information" and "employee payroll records."

Defendants reiterated in a February 23 letter their belief that Plaintiffs did not properly object because they failed to specifically designate what documents were in dispute and the reasons removal of the confidential designation was sought.  In a February 24 letter, Plaintiffs responded that they had properly challenged Defendants universal designation and repeated their contention that the documents were deemed "not Confidential under the Stipulation and Order."  Defendants apparently failed to respond to Plaintiffs' February 24 letter.

The issue of confidentiality came up again when Plaintiffs challenged certain of Defendants' deposition designations.  Defendants eventually responded that the reason for the confidential designation was that the underlying documents discussed in the depositions were

confidential.

Defendants filed a Motion to Designate Documents and Testimony Confidential and to Prohibit Disclosure of Non-Public Information on May 25.

**DISCUSSION**

The Court will first address the outstanding issues from the Motion for Protective Order—namely, disclosure of DeSantis's tax returns and real estate commissions.  With respect to the tax returns, Defendants contend that "the only possible relevance" of the tax returns is punitive damages.  Plaintiffs respond, and the Court agrees, that these materials fall within the broad definition of relevance contemplated by Rule 26(B),[5] and are in fact quite relevant to this lawsuit.  The core of Plaintiffs' Complaint is that DeSantis conspired with Enterprise and the sham entities to earn illegal referral fees in addition to his legal commissions.  Tax returns and actual commissions are just the sort of evidentiary materials likely to reveal if such a conspiracy exists.  Defendants' contention that such documents are private is properly dealt with through adherence to the parties' Confidentiality Order.  Finally, the Court agrees that the time period of required disclosure should be limited to April 2004 through May 26, 2005 as the parties have limited the disclosure of other documents.

The Court will next move to Defendants' Motion to Designate Documents and Testimony Confidential and to Prohibit Disclosure of Non-Public Information.  The Court notes at the outset that Plaintiffs have agreed to keep any personal identification information confidential.  Such measures are required by Local Rule 8.1 and the Court expects Plaintiffs to

---

[5] "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1).

7

stick to this agreement in the future.

However, beyond this limited area of agreement the parties' positions are vastly different. Plaintiffs contend that all 400,000+ documents have been automatically deemed not confidential by the express terms of the Confidentiality Order. Defendants argue that Plaintiffs have failed to comply with the Stipulation and Order and are attempting extra-judicial self help in contravention of the Confidentiality Order. Defendants then cite a number of cases for the proposition that a Confidentiality Order should rarely be altered by the courts, particularly where the order was agreed to by the parties before submission to the Court. *E.g., AT&T Co. v. Grady*, 594 F.2d 594, 597 (7th Cir. 1978); *Longman v. Food Lion, Inc.*, 18 F.R.D. 331, 334 (M.D.N.C. 1999); *Omega Homes, Inc. v. Citicorp Acceptance Co.*, 656 F. Supp. 393, 404 (W.D. Va. 1987).

The Court finds that Defendants' arguments are utterly meritless. Plaintiffs have not sought to modify the Confidentiality Order in any way, and in fact, have scrupulously complied with its terms. Rather, Defendants are attempting to recast events in a manner that allows them to escape the clear consequences of noncompliance with a Confidentiality Order that they drafted. The Confidentiality Order provided a restrictive definition of the information that could properly be deemed "confidential." That definition is roughly analogous to a trade secret—exactly the limited type of information that courts typically allow parties to protect from public dissemination. *See Brown & Williamson Tobacco Corp. v. Federal Trade Commission*, 710 F.2d 1165, 1179 (6th Cir. 1983) (explaining that privacy rights and trade secrets are two content-based exceptions to the general rule of public disclosure); *United States v. Contents of Nationwide Life Ins. Co. Account No. X0961*, No. C-1-05-196, 2006 U.S. Dist. LEXIS 18772, *16 (S.D. Ohio April 12, 2006) (noting that "where company records are at issue, sensitive information should ordinarily rise to the level of privileged 'trade secrets' before it may be

sealed"). Importantly, the Confidentiality Order required the party designating information as confidential to do so in good faith.

Defendants purported to fulfill this obligation by labeling every page of every document as confidential. They did so without regard to the documents' contents and without reviewing the documents for confidential materials. Plaintiffs responded by making a formal request to remove the Confidential designation as required by the Confidentiality Order.[6] Defendants waited eight days to respond, and in that response admitted their obligation to file "our motion with the court . . . pursuant to the Confidentiality Stipulation and Order." Plaintiffs agreed to allow Defendants 11 days beyond the initial deadline to negotiate and ultimately, if an agreement could not be reached, file the required motion. Defendants did neither. Instead, Defendants waited until the day their motion was due to proclaim in an e-mail that Plaintiffs failed to properly challenge the Confidential designations because they failed to specify "the document, information, or other items as to which such removal is sought and the reasons for the request." This Motion was not filed until over three months later.

Plaintiffs contend, and the Court agrees, that because Defendants failed to file a motion within the time required by the plain language of the Confidentiality Order, "the discovery

---

[6] Although the ultimate propriety of Plaintiffs' request is not dispositive of the outcome, the Court finds that Plaintiffs' concerns were entirely valid. First, Plaintiffs challenged whether marking every single page as confidential satisfied the good faith obligation of the Confidentiality Order. Plaintiffs' suspicions that Defendants failed to review the documents ultimately proved true. Second, Plaintiffs indicated that they reviewed the documents before concluding that none of them qualified as confidential. An affidavit of counsel further attests that two lawyers spent a number of days reviewing the documents. Plaintiffs at least took the time to review the documents before staking out their position.

9

materials covered by [Plaintiffs'] request shall be deemed not confidential." Defendants argument that the February 21 e-mail somehow put the onus on Plaintiffs to take action misses the mark for a number of reasons. For example, Defendants' contention in the e-mail was that the Plaintiffs' request was not proper. However, that issue is not for Defendants to unilaterally decide, but for the Court to decide after a motion is properly filed pursuant to the Confidentiality Order.[7] Moreover, it strains credulity for Defendants to argue that Plaintiffs should have been more specific in their request. Plaintiffs at least took the time to review the documents prior to concluding that they were not confidential. They provided their reasons, and indeed, in light of Defendants' designations it would seem odd that Plaintiffs would be required to explain why each of 400,000 documents was *not* a "trade and business secrets or other confidential financial,

---

[7] An argument could be made that there is a difference between a "request" that is procedurally deficient and a "request" where the parties have substantive disagreement. This finds some support in the language of the Confidentiality Order, in that the subparagraph outlining the procedural requirements of the request is separate from the subparagraph requiring a motion to the Court where the parties cannot reach agreement on whether certain materials are confidential. In other words, the threshold for Court intervention (a dispute over confidentiality) is arguably never reached if the request is not properly served. This argument might have some merit in different circumstances. For example, the Court might reach a different conclusion if Defendants had actually made an attempt to fulfill their obligation to make a good faith determination of confidentiality by designating only certain documents and Plaintiffs had responded that each and every document was not confidential without any explanation. However, in this case Plaintiffs properly objected that Defendants' designations were not made in good faith, a conclusion that is facially apparent and does not require a detailed review of specific documents. Moreover, because Defendants drafted the Confidentiality Order and addressed their designations in only in general terms, they can hardly be heard to complain if Plaintiffs responded in a similar manner.

personal, commercial or proprietary information, which, if disclosed publicly, would put the designating party at a competitive disadvantage." Considering Defendants' initial and continued refusal to conduct a good faith review of whether the documents were confidential, the Court concludes that Plaintiffs' response was perfectly appropriate.

Defendants other arguments are similarly without merit. Defendants contend that they would not have made any of the documents available without the Confidentiality Order,[8] and further that reviewing documents prior to production was "an enormously expensive and time-consuming burden that Defendants did not agree to undertake." As for the former argument, the Court notes that Defendants are not the ultimate arbiter of what must be produced under the Federal Rules. As for the latter, Defendants in fact agreed to make a good faith effort to mark documents as confidential under the terms of the Confidentiality Order that Defendants drafted.[9] Most importantly, these are both arguments that should have been made, if at all, in a motion as

---

[8] Although not entirely clear, Defendants appear to argue in their Reply that the Confidentiality Order at issue here was a "blanket order" that allowed for the designation of all exchanged documents as confidential. The Order speaks for itself, and quite certainly did not entitle Defendants to simply label all documents as confidential.

[9] Defendants make numerous other representations in their briefs that are similarly devoid of support in the record. For example, Defendants contend that the Confidentiality Order allowed them to designate documents as confidential "in their discretion . . . ." To the contrary, the Confidentiality Order does not provide the designating party with discretion. Defendants also state that the e-mail of February 21 "was ignored," when in fact Plaintiffs responded the next day. The final letter in the parties' exchange was Plaintiffs' statement that they were "confident that we followed the express protocol set forth in the Court's December 5, 2005 confidentiality Stipulation and Order" and that "the discovery materials covered by Plaintiffs' February 2 correspondence are now 'deemed not Confidential.'"

11

required by the Confidentiality Order.

Defendants also argue that Plaintiffs' request was not served on all counsel and was therefore ineffective. However, it was served on counsel charged with producing the documents at issue. At the time that counsel announced her conclusion that Defendants would not be filing a motion, the failure to serve on other opposing counsel was not even mentioned. Nor is there any evidence that other counsel was not fully aware of the circumstances. Rather, this argument appears to be a last-minute attempt to avoid a clear failure to adhere to obligations under the Confidentiality Order. In any event, this would again be a matter that should have been brought to the Court's attention through a motion filed under the proper procedures. The time for doing so has passed.

Defendants' argument that Plaintiffs have somehow waived their right to seek the "wholesale declassification" of documents is not only meritless but in fact supports the conclusion that Defendants have waived their right to challenge the automatic removal of the confidential designation under the Confidentiality Order. Each of the cited cases involves a party who originally agreed to a set of ground rules and later asked the courts to change those rules. *West Virginia v. Moore*, 902 F. Supp. 715, 718 (S.D. W.Va. 1995); *Omega Homes*, 656 F. Supp. at 404; *Zenith Radio Corp. v. Matsushita Elec. Corp.*, 529 F. Supp. 866, 887 (E.D. Pa. 1981). Here, it is Defendants who agreed to certain rules—requiring good faith review of documents and prompt referral of disputes to the Court—and now seeks to change those rules. The Court finds a quotation from the *Zenith* Court most appropriate in these circumstances: Defendants "cannot now attempt to undo what they have willingly wrought; having made their bed, they must now sleep in it."

The Court also finds it unnecessary to undertake a document-by-document review to

determine whether the documents are confidential, as Defendants contend.  Pursuant to the express terms of the Confidentiality Order Defendants penned and agreed upon, all of the documents at issue will be "deemed not confidential."

Finally, the Court also agrees with Plaintiffs that the disputed deposition testimony is not confidential.  Defendants' only argument is that the underlying documents are confidential.  Because the Court finds that the underlying documents are not confidential, Defendants' sole argument with respect to the testimony also fails.  However, Plaintiffs should keep in mind that private information as outlined above and in Local Rule 8.1 must remain confidential.

**CONCLUSION**

For the foregoing reasons, the Court DENIES Defendants' motions.


IT IS SO ORDERED.


/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated:  11/17/06